b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICKEY WAYNE GIPSON, Plaintiff | CIVIL ACTION NO. 1:17-CV-01394 |
| VERSUS | JUDGE DRELL |
| JAMES LEBLANC, *et al.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Defendants Sandy McCain and Troy Poret filed a Motion for Summary Judgment. (Doc. 29). Because there are genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff Ricky Wayne Gipson's ("Gipson's") exposure to environmental tobacco smoke ("ETS"), Defendants' Motion for Summary Judgment (Doc. 29) should be DENIED.

I. Background

Gipson filed a complaint pursuant to 42 U.S.C. § 1983, *pro se* and *in forma pauperis*. (Docs. 1, 5, 12). Gipson's complaint against James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, and the State of Louisiana was dismissed. (Doc. 15). The remaining named Defendants are Sandy McCain ("McCain") (warden of the Raymond Laborde Correctional Center in Cottonport, Louisiana ("RLCC")), Troy Poret ("Poret") (deputy warden of the RLCC), and Blaine Villemarette ("Villemarette") (assistant warden of RLCC). Gipson is suing Defendants in both their individual and official capacities.

Gipson complains of exposure to ETS. Gipson seeks a jury trial, appointment of an expert, declaratory judgment, injunctive relief (removal of all tobacco products from the prison commissary), compensatory and punitive damages, and costs.

Gipson alleges that he has been at RLCC since July 12, 2016 (Doc. 1, p. 5). RLCC removed cigarettes from the prison commissary in 2016, in belated compliance with La. R.S. 40:1300.256. (Doc. 1, p. 5). As a result, inmates began purchasing smokeless tobacco ("dip"), drying it in microwaves, and using pages of the Bible to roll and smoke it. (Doc. 1, p. 5).

The drying process in the microwave causes a foul odor and ETS. (Doc. 1, p. 5). ETS aggravates Gipson's allergies and causes severe headaches, burning and teary eyes, a runny nose, sneezing, and sometimes, chest pain. (Doc. 12, p. 2). A study posted in RLCC shows smoking dip causes chronic obstructive pulmonary disorder, which leads to emphysema and lung failure, and is more dangerous than smoking cigarettes.[1] (Doc. 5).

Gipson alleges he complained to Defendants of exposure to ETS (as well as mojo, marijuana, and crystal meth), but that Defendants refuse to take steps to address the problem, such as not selling dipping tobacco in the commissary. (Doc. 1, p. 6; Doc. 5).

---

[1] According to a Government website, https://smokefree.gov/dangers-dip: "There are at least 30 chemicals in dip that are linked to cancer, including lead, uranium, and arsenic. Also, dip has more nicotine than cigarettes. Dipping two cans a week gives you as much nicotine as smoking 3½ packs of cigarettes a day for one week. Nicotine from dip stays in your blood longer than nicotine from smoking, and that can make it harder to quit."

McCain and Poret filed a Motion for Summary Judgment with affidavits, documentary evidence, and a statement of uncontested material facts. (Doc. 29). Gipson filed a response to that motion (Doc. 31) with exhibits attached (Doc. 31-2). Defendants replied. (Doc. 32). [2]

## II. Law and Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[3]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty

---

[2] This is the second case to come before this Court within the last year concerning complaints of ETS from inmates drying and smoking smokeless tobacco in RLCC. See Davis v. McCain, 2018 WL 4936566 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018).

[3] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

### B. Gipson's complaint against Villemarette should be dismissed for failure to effect service.

Villemarette was never served because he is no longer employed at RLCC. His summons was returned unexecuted. (Doc. 19). Because more than 120 days have passed since Gipson filed his complaint, and because Villemarette's summons was returned unexecuted, the claims against Villemarette should be dismissed without prejudice under Fed. R. Civ. P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

### C. Defendants' Motion for Summary Judgment should be denied.

Defendants contend they are entitled to summary judgment because: (1) Gipson has not shown Defendants are deliberately indifferent to his exposure to ETS; and (2) Gipson has not shown he suffered a physical injury due to exposure to ETS.

#### 1. The Supreme Court's test to determine whether an inmate is entitled to relief for exposure to ETS in prison.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on convicted inmates during imprisonment. The Eighth Amendment encompasses a right to "reasonable safety," including protection against unsafe

4

conditions that pose "an unreasonable risk of serious damage to [the inmate's] future health." See Helling v. McKinney, 509 U.S. 25, 33, 35 (1993); see also Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016). A prison official's duty to protect against such unsafe conditions arises where the inmate has been placed "under a regime that incapacitates [him] to exercise ordinary responsibility for his own welfare." County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998); see also Legate, 822 F.3d at 210.

In Helling, 509 U.S. at 34, the Supreme Court held the Eighth Amendment protects against imminent dangers as well as current unnecessary and wanton infliction of pain and suffering. See also Legate, 822 F.3d at, 210. Prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to ETS. See Helling, 509 U.S. at 33-35.

The Supreme Court set forth a two-pronged test to determine whether exposure to ETS entitles an inmate to relief under the Eighth Amendment. First, a prisoner must prove, objectively, that he is "being exposed to unreasonably high levels of ETS." See Black v. Concordia Par. Det. Ctr., 607 Fed. Appx. 440, 441 (5th Cir. 2015) (citing Helling, 509 U.S. at 35). Second, the prisoner must show, subjectively, that prison authorities demonstrated a "deliberate indifference" to his plight. See id. The United States Court of Appeals for the Fifth Circuit has held that allegations such as Gipson's are sufficient to state a claim for ETS exposure. See Bruce v. Little, 568 Fed. Appx. 283, 286 (5th Cir. 2014) (inmate was exposed to ETS because inmates were smoking smokeless-tobacco and the jail's no-smoking policy was not enforced).

5

### 2. There are factual and legal issues regarding Gipson's alleged exposure to a serious risk of future harm.

Defendants contend Gipson's claim must fail because he has not alleged a physical injury.

For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. See Hicks, 2009 WL 2969768 at *5.

As stated in Helling, 509 U.S. at 35, Gipson may show an unreasonable risk of serious damage to his future health from exposure to ETS to satisfy the objective component. Compare Davis, 2018 WL 4936566, *6. But, to be clear, Gipson is not required to allege a current physical injury.

This Court has previously held that the United States Surgeon General's June 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke,"[4] establishes conclusively that exposure to ETS is unhealthy and dangerous, and that scientific evidence shows there is no safe level of, or safe exposure to, ETS. See Hicks v. Correctional Corp. of America, 2009 WL 2969768, *6-7 (W.D. La. 2009). The Surgeon General found that exposure to ETS has immediate adverse effects on the cardiovascular system and causes coronary heart disease and lung cancer.

---

[4] Available at https://www.ncbi.nlm.nih.gov/books/NBK44324/.

It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report documenting the health consequences of involuntary exposure to ETS, and stating the scientific evidence indicates there is no risk-free level of exposure to ETS. See Davis v. McCain, 2018 WL 4936566, at *4 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); Tilmon v. Keith, 2016 WL 6662470, *1 (W.D. La. 2016); Samuels v. Terrell, 2015 WL 4092868, *5 (W.D. La. 2015); Samuels v. Arnold, 2014 WL 1340064, *3 (W.D. La. 2014); Williams v. Johnson, 2014 WL 2155211, *4 (W.D. La. 2016).

In his verified Complaint (Doc. 1),[5] Gipson alleges both a serious risk of future injury through continued exposure to ETS, and current aggravation of his allergies from exposure to ETS (severe headaches, burning and teary eyes, runny nose, sneezing, and occasional chest pain). Gipson has not adduced any medical evidence to prove he is currently suffering from aggravation of his allergies.[6] But Defendants

---

[5] On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit. See Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003); see also Butts v. Martin, 877 F.3d 571, 582 (5th Cir. 2017); Oladipupo v. Austin, 104 F. Supp. 2d 626, 632–33 (W.D. La. 2000); Barker v. Norman, 651 F.2d 1107, 1114–15 (5th Cir.1981); 28 U.S.C. § 1746(2). Gipson's complaint (Doc. 1) is verified. Gipson also stated that his brief in opposition to Defendants' Motion for Summary Judgment is signed "under the penalty of perjury" (Doc. 31-1).

[6] Gipson attached to his complaint the 2008 prison medical order for him to be assigned to a non-smoking dorm. Defendants contend that order amounts to hearsay because it is uncertified. However, that order is part of Gipson's prison medical records from 2008, as found in Gipson v. Keith, 2015 WL 5772003, *5, *8 (W.D. La. 2015) (R&R), report and recommendation adopted, 2015 WL 5772105 (W.D. La. 2015), aff'd in part, 678 Fed. Appx. 264 (5th Cir. 2017), and the Court takes judicial notice of it. It is noted that the prison records submitted by Defendants (Doc. 25) are also unauthenticated.
Defendants also object to Gipson's copy of a warning posted in RLCC about the dangers of smoking dip on the basis that it is not "authenticated." (Doc. 31-2). Because this evidence is

have produced no contrary medical evidence. Defendants have also not disputed that Gipson is exposed to ETS at RLCC, or that there is a serious risk of future harm to his health from exposure to ETS.

Because Gipson is not required to allege a current physical injury to state a § 1983 claim for exposure to ETS, Defendants have not carried their burden of proving they are entitled to judgment as a matter of law. Further, Gipson's verified allegations, the Surgeon General's report, and Defendants' silence regarding Gipson's allegations on the current and future perils of ETS exposure, all amount to one thing at this stage: a genuine issue of material fact for trial. Therefore, Defendants' Motion for Summary Judgment (Doc. 29) should be denied as to this issue.

### 3. There are genuine issues of material fact as to whether Defendants have been deliberately indifferent to the serious risk of future harm to Gipson's health through exposure to ETS.

Next, Defendants contend Gipson has not shown they have "encouraged or allowed smoking in a 'deliberately indifferent' manner to him." (Doc. 29, p. 1). Defendants rely on two factors to prove they have not been deliberately indifferent to Gipson's exposure to ETS: (1) RLCC adopted a no-smoking policy in March 2009; and (2) Gipson has never reported anyone for violating the smoking ban.

For the subjective component of his burden of proof, Gipson must ultimately prove the Defendants' deliberate indifference to his serious medical needs or serious risk of future harm, considering the prison officials' current attitudes and conduct and any policies that have been enacted. See Hicks, 2009 WL 2969768, *5. A prisoner

---

not necessary to a decision on Defendants' Motion for Summary Judgment, the Court declines to rule on the objection.

8

must prove not only that the level of ETS to which he is exposed is unreasonable, but also that prison officials have shown "deliberate indifference" to the health risks associated with ETS. See Hicks, 2009 WL 2969768, *5. The adoption of a smoking policy bears upon, but is not conclusive of, the inquiry into deliberate indifference. See Hicks, 2009 WL 2969768, *5. Defendants' position does not warrant summary judgment.

First, Defendants rely on the fact that they adopted a ban on smoking inside RLCC as proof they have not been deliberately indifferent to the risk to inmates of future harm from exposure to ETS. Warden McCain's affidavit states that RLCC banned smoking indoors in March 2009.

In 2006, Louisiana enacted the Louisiana Smoke Free Air Act (2007), 2006 La. Acts No. 815, in La. R.S. 40:1291.2, et seq.,[7] which prohibits smoking in all public places in Louisiana. The Act also prohibited smoking in any state, local, or private correctional facility after August 15, 2009. La. R.S. 40:1291.11(B)(14). Therefore, in March 2009 RLCC adopted as a policy a statutory provision that was enacted in 2006 and made effective in August 2009.[8]

In the 1993 case of Helling, 509 U.S. at 36, the Supreme Court stated that the adoption of a smoking policy bears heavily on the inquiry into deliberate indifference. But the decision did not consider the import of a policy conforming to an existing

---

[7] Section 1291.2 states in part: "[I]t is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to secondhand smoke."

[8] Warden McCain's affidavit makes it clear that he is under the misapprehension that smoking was banned in all Louisiana prisons in 2015. (Doc. 29-2). Again, the statute was passed in 2006, and applied to RLCC as of 2009.

9

statutory requirement. Since the statutory application of the Louisiana Smoke Free Air Act to prisons in 2009, smoking tobacco in Louisiana prisons is prohibited by law. Thus, in this distinguishable context, a prison's adoption, as policy, of existing law is not entitled to much weight in determining the issue of deliberate indifference. Rather, the more salient question is whether the prison adhered to, or knowingly or recklessly deviated from, its policy and the law.

Therefore, RLCC's adoption of the law as a policy to ban smoking is not enough, on its own, to prove Defendants were not deliberately indifferent to the risk to inmates' future health from exposure to ETS. The timing of RLCC's adoption of a no-smoking ban is also not indicative of a lack of deliberate indifference.

Moreover, as the Court found in Davis, 2018 WL 4936566, *4, RLCC cannot simply rely on the existence of a policy banning smoking tobacco. The ban must also be enforced. The fact that only smokeless tobacco is now sold in the RLCC canteen does not insulate RLCC officials from liability.[9] "If the smokeless tobacco is being altered and smoked [inside RLCC], the ban on smoking inside the prison is being broken. RLCC is responsible for enforcing that ban." Davis, 2018 WL 4936566, at *4.

As to potential liability for non-enforcement, Davis is instructive. In Davis, the Court entered a preliminary injunction in October 2018, ordering officials at the RLCC to enforce the state ban on smoking tobacco of any kind, including smokeless tobacco, in RLCC. See Davis v. McCain, No. 1:16-1534 (W.D. La.) at Doc. 68.

---

[9] Gipson contends the sale of smokeless tobacco (dip) in the prison commissary is replacing the revenue lost due to the ban on cigarettes, smoking tobacco, and rolling paper.

Therefore, Defendants are aware of both the problem and their legal obligation to enforce the smoking ban as a matter of law and policy.[10]

Next, Defendant Poret responded to Gipson's grievance concerning ETS by stating that tobacco is banned, and that officers punish inmates who are caught smoking when the officers "make rounds" through the prison. (Doc. 1-2, p. 6; 29-1, p. 16). Warden McCain states in his affidavit that RLCC policy warns inmates they may be disciplined if caught smoking inside RLCC. (Doc. 29-1, p. 3).

Although Gipson contends in his verified Complaint (Doc. 1) it is obvious the smoking ban is being violated, Defendants have not alleged they have taken any additional steps to enforce the smoking ban. (Doc. 5). Defendants allege only that they punish violators caught when officers are making their customary rounds. For instance, Defendants have not alleged any measures taken to control the misuse of smokeless tobacco, such as what they do when they smell smokeless tobacco being dried in a microwave, or what they do to preclude use of the microwaves for drying smokeless tobacco.

Moreover, Defendants contend, through an affidavit from McCain (Doc. 29-1), that Gipson has never told them which inmate(s) are smoking indoors and on what dates. Defendants' argument places the onus to enforce the ban on inmates, and has been found inadequate, as discussed in Samuels v. Arnold, 2014 WL 1340064, *5 (W.D. La. 2014) (report and recommendation) (citing Ware v. Batson, 480 Fed. Appx. 247, 248 (5th Cir. 2010)). Reporting a particular violation, along with the name of

---

[10] The Davis case was filed a year before–and the preliminary injunction was entered in Davis a year after–Gipson filed this action.

11

the violator, is not the only way to bring exposure to ETS to the attention of a correctional officer. Compare Samuels, 2014 WL 1340064, at *5. The odors from smokeless tobacco are pervasive and obvious to both inmates and prison officials. Therefore, that fact that Gipson has not reported any smoking ban violators does not show that Defendants were not deliberately indifferent to a serious future risk of harm to Gipson's health.

The adoption of a no-smoking policy and the fact that Gipson has not reported any violators of the smoking ban do not tend to prove Defendants have not been deliberately indifferent. Because Defendants have not shown that there is no genuine issue of material fact regarding deliberate indifference, they are not entitled to summary judgment as a matter of law. Defendants' Motion for Summary Judgment (Doc. 29) should, therefore, be denied.

### D. Defendants' statement of uncontested material facts does not warrant summary judgment.

Lastly, and generally, Defendants argue they are entitled to summary judgment because Gipson failed to counter their statement of uncontested material facts.

For purposes of Rule 56, an issue is material if its resolution will determine the outcome. William W Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 480 (1984). "[T]he Supreme Court has stated that '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" St. Amant

12

v. Benoit, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive area of law involved is relevant in determining which facts are material. See id. at 252.

The burden of proof is on Defendants, as movants, to show there are no genuine issues of material fact. See Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995) (citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)) ("The party moving for summary judgment must initially demonstrate the absence of a genuine issue of material fact.").

Defendants' first nine statements of material fact appear to be uncontested by Gipson. Those statements support Defendants' arguments as to the existence of a no-smoking policy and their contention that Gipson never reported anyone who violated that policy. Even accepting Defendants' statements of material fact as true, they do not show Defendants were not deliberately indifferent to the risk of harm created by ETS from inmates' drying and smoking smokeless tobacco, as discussed above.

The last two statements of "material fact" allege that Gipson "has no evidence" to show Defendants have been deliberately indifferent to a serious risk of harm to his health from ETS. Those are not material facts that support Defendants' initial burden at the summary judgment stage. Rather, they are declarations that Gipson will not carry his ultimate burden of proof at trial. And Gipson's verified allegations are nevertheless contradictory, as explained above.

Therefore, Defendants' argument that they are entitled to summary judgment because Gipson did not file a statement of uncontested material facts is without merit.

## III. Conclusion

Because there are genuine issues of material fact that preclude a summary judgment, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 29) be DENIED.

IT IS ALSO RECOMMENDED that Gipson's complaint against Blaine Villemarette be DISMISSED WITHOUT PREJUDICE for failure to effect service of process under Fed. R. Civ. P. 4(m).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __6th__ day of September, 2019.

                                              Joseph H.L. Perez-Montes
                                              United States Magistrate Judge